CASE 10—ACTION BY J. D. SHORTELL AGAINST GREEN COUNTY TO RE-
COVER ON PAST DUE COUPONS ON GREEN COUNTY BONDS SUBSCRIBED
TO THE C. & O. R. R. Co.—JUNE 17.

# Green County v. Shortell.

### APPEAL FROM GREEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

COUNTIES—BOND ISSUE—SUBSCRIPTION TO RAILROAD—CONDITIONS OF
ISSUANCE—NOTICE TO PURCHASERS—DUTY TO SEARCH—NONCOM-
PLIANCE—ESTOPPEL—PAYMENT OF INTEREST.

Held:   1. Where bonds issued by a county in subscription to rail-
road stock contained no recitals as to the authority of the officers
issuing them, or as to the performance of preliminaries re-
quisite   to   their   issuance,   there   was   no   estoppel   on
the county to plead a noncompliance with such conditions, and
that they were issued without authority of law.

2. Where the charter of a railroad (1 Sess. Acts 1869, p. 463, chap.
1578) vested in the company power to construct a road through
certain counties, and, in exception to the general law of the
State, empowered any of such counties to subscribe to stock,
issuing bonds therefor, on such conditions as it might deem fit,
and a county did issue bonds on specified conditions to be per-
formed by the railroad, which were not printed on the bonds,
but appeared on the orders of record in the county court, a pur-
chaser of such bonds was charged with notice of the conditions
upon which they were to be issued, a noncompliance with which
would be available as a defense to a suit by him on the bonds.

3. In pursuance of legislative authority, a railroad company filed in
the county court a request that there be submitted to the quali-
fied voters the question as to whether the county should sub-
scribe for capital stock of the company, issuing its bonds there-
for, upon the condition that the company should construct its
road through the county, and within one mile of a certain town,
and also upon the further condition that the bonds should not
be issued, or the county pay any part of either principal or in-
terest, until it should be exonerated from payment of a sub-
scription to the stock of a certain other road.   The issue was
ordered at an election held for that purpose, and all the orders
made in pursuance thereof were conditioned as stated.   HELD,
that properly construed, the exoneration was a condition preced-

Green County v. Shortell.

ent, after which the bonds could be issued, but would not ba binding in the event of a failure on the part of the railroad to comply with the other condition.

4. An order of the county court directing the clerk to make a subscription to certain railroad stock on behalf of the county, and on the terms specified in the order submitting the question to a vote, was a direction to the clerk to do a merely ministerial act, vested in him no discretion, and was not an invalid delegation of the power vested in the county court to make the subscription.

5. Where by its charter a railroad company was to be built entirely across the State, and, by the terms of the subscription to stock of the road by a certain county through which it passed, bonds were issued, conditioned on the road's being constructed through the county, a subsequent construction by a successor of such road of four and a half miles of railroad in the county was not a substantial compliance with the conditions of the bond issue.

6. Payment of interest on bonds by a county for some years does not estop it to show their invalidity.

ERNEST MACPHERSON, JOHN W. LEWIS AND D. T. TOWLES, ATTORNEYS FOR APPELLANT, GREEN COUNTY.

### CLASSIFICATION OF POINTS.

1. Conditional subscriptions to stock in the Cumberland & Ohio Railroad Company were expressly authorized by its charter. Shelby County Court v. Cumberland & Ohio R. R. Co., 8 Bush, 217. Such also is the general law in the absence, from the charter or law authorizing the subscription, of a prohibition of conditional subscriptions to stock, the subscriber may impose such conditions as he may choose. Jack v. City of Helena, 41 Ark., 213; Atchison, &c., R. R. Co. v. Jefferson Co., 21 Kan., 309; Portland, &c., R. R. Co. v. Hartford, 58 Me., 23; 2 Elliott R. R., sec. 852; Brown v. Gibson Co., 73 Ind., 543; People v. Holden, 91 Ill., 466; Coe v. Caledonia, &c., R. R. Co., 27 Minn., 197; Penobscot, &c., R. R. v. Dunn, 39 Me., 587; Milwaukee, &c., R. R. v. Field, 12 Wis., 340; Hanover Junction, &c., R. R. v. Haldeman, 82 Pa. St., 36; Connecticut, &c., R. R. v. Baxter, 39 Vt.; Missouri P. R. R. v. Tygard, 84 No. 264.

2. Where the location and construction of a railway is not made as required by the conditions, bonds issued in payment are invalid even in the hands of a *bona fide* holder. Chicago, &c., R. R. v. Marseilles, 84 Ill., 145; Mellen v. Lansing, 19 Blatchford, 512; Bucksport, &c., R. R. v. Brewer, 67 Me., 295.

3. The purchaser of municipal bonds is bound to take notice

of the law under which the bonds are issued. Barnett v. Denison, 145 U. S., 139.

4. The federal courts have established the rule that in the absence of a recital in a municipal bond that the conditions precedent to its validity have been performed, it is open to the municipality to show the nonperformance of the conditions. County of Chambers v. Clews, 88 U. S., 321; Citizens' Savings Association v. Perry County, 156 U. S., 701; Buchanan v. Litchfield, 102 U. S., 292; Town of Coloma v. Eaves, 92 U. S., 481, remarks of Justice Bradley; Provident Life and Trust Co. v. County of Mercer, 170 U. S., 601; Carroll County v. Smith, 111 U. S., 556; School District v. Stone, 106 U. S., 183-187; Hopper v. Town of Covington, 118 U. S., 148.

5. Where bonds purporting to have been issued by a municipality contain no recitals, but are mere naked promises to pay, every purchaser and holder of the securities is chargeable with notice of whatever appears upon the face of the records. Lewis v. Commissioners of Bourbon Co., 12 Kan., 186; Marsh v. Fulton Co., 10 Wall., 676; Pendleton v. Amy, 13 Wall., 297; Commissioners of Knox Co. v. Aspinwall, 21 How., 539; Bissell v. City of Jeffersonville, 24 How., 287; Hopp v. Trustees of Brown Tp., 13 Ohio St., 311; State v. Trustees of Union Tp., 15 Ohio St., 437; Clark v. City of Des Moines, 19 Iowa, 199; Veeder v. Town of Lyman, 19 Wis., 298; Starin v. Town of Genoa, 23 N. Y., 439; Gould v. Town of Sterling, 23 N. Y., 456; The People v. Mead, 24 N. Y., 114; 36 N. Y., 224.

6. No municipal or political body can be estopped by the acts or declarations of its officers from denying their authority to bind it. Justice Bradley, in Chisholm v. Montgomery, 2 Woods, 584. A person dealing with an agent must look to his authority. Snow v. Warner, 10 Met. (Mass.), 136; Reese v. Medlock, 27 Tex., 120. The rule is strictly applied to the powers of public officers. Mayor and City Council of Baltimore v. Reynolds, 20 Maryland, 1; Marsh v. Fulton Co., 10 Wall., 683; State v. Daviess Co., 64 Mo., 30; People v. Supervisors, Town of Waynesville, 88 Ill., 469; Town of Plattsville v. Galena, &c., R. R. Co., 43 Wis., 493; Board, &c., of Douglass v. Walbridge, 38 Wis., 179.

7. The validity and effect of municipal bonds are determined always by the law of the place where the obligation is made. Dixon Co. v. Field, 111 U. S., 83. This proposition seems to be assumed as a matter of course in the federal courts.

8. The county judge could not delegate to the railroad the duties confided to him by the people. "This is an official trust which neither a county court nor its successor, the board of supervisors, could delegate to strangers owing no obligation to

Green County v. Shortell.

the county." Board of Jackson Co. v. Brush, 77 Ill., 59. He had no right to issue bonds in a form other than that voted by the people.

9. The word "through," as used in the order submitting the vote to the people, meant from end to end and from side to side. "Act to incorporate the Cumberland and Ohio Railroad Company," Acts of 1869, vol. 1, pages 463-474, the opening words of section 15; the language of section 18, showing a road was contemplated from "the Ohio River" through many named counties, including Green, "to a point on the boundary line between the States of Kentucky and Tennessee" "with a view of connecting with the Southern system of railways converging at Nashville, Tennessee;" the condition read that the road shall "run through Green county and within one mile of the town of Greensburg." The whole conditional contract "is to be taken together, and to have a reasonable construction according to the intent of the parties." Peoples' Ferry Co. v. Balch, 74 Mass., 303-312. All the circumstances prove that the people understood that they were contracting for a complete line to run through the county from side to side. The language of the condition must be construed according to its ordinary meaning; that is, as it would be understood by the voters. People v. Town of Clayton, 88 Ill., 45.

10. The payment of interest on the bonds for a few years does not estop the county from contesting the validity of the bonds. Mercer County v. Provident Life and Trust Co., 19 Circuit Court of Appeals, 58; Ashuelot National Bank v. School District, 41 Fed., 514; State v. School District, 16 Nebraska, 182; Graves v. Saline County, 161 U. S., 373.

11. The county judge without associating with himself the justices of the peace had no power to act on the petition for subscription or otherwise. 3d Proviso to section 15 of the charter; Bowling Green and Madisonville Railroad Co. v. Warren County, 10 Bush, 711; "herein" in the proviso referred only to the powers therein given to the county court. Spring v. Collector, 78 Ill., 101; Exp. Partington, 6 Q. B., 649-653; McGill v. Municipal Council, 12 U. C. Q. B., 44.

12. If these bonds and coupons are to be treated as put upon the footing of bills of exchange the five-year limitation should apply under our statutes.

13. If the court should reverse the judgment, which was given on the pleadings, and the amended answer of appellant contained any defense, the court below should be directed to enter judgment for Green county, Civil Code, sec. 386; Eaves v. Stone, 80 Ky., 78; Enc. of Pleading and Prac., vol. 11, p. 914.

GEORGE W. JOLLY, ATTORNEY FOR APPELLEE.

A bond payable to the order of the 'president of the railroad company and endorsed in blank is equivalent to making it payable to the bearer and renders it transferable by mere delivery and thus converts it into commercial paper. Daniel on Neg. Insts., sec. 693.

*The charter expressly required the Green county bonds to be issued in negotiable form.* The language is: "All said bonds shall be payable to bearer, with coupons attached, bearing any rate of interest not to exceed six per cent. per annum payable semi-annually *in the city of New York*, and payable at such time as they may designate, not exceeding thirty years from date: . . ." No more appropriate word could have been selected than the word "bearer" to make the bonds negotiable. The Legislature could have intended nothing else by the use of that word. A great number of the decisions of the Supreme Court of the United States, and all, or practically all, of the decisions of the State courts had then declared that the use of that word in municipal bonds enabled them to be transferred by mere manual delivery like an ordinary greenback bill or national bank note, and clothed such instruments with all the qualities and incidents of commercial paper. And this court had more than ten years before these bonds were issued decided the law to be so in this State. And the law thus declared was re-affirmed by Judge Cofer ten years later.

The statute (Ky. Stats., sec. 474) relative to the assignment of bonds, notes, etc., has been in force more than fifty years, but it has never been supposed by the bar or courts of this State that it had any application to municipal bonds. If so, it surely could not have escaped the attention of this court in considering the cases in 2d Metcalf and 78 Ky., above cited. In Virginia, a similar statute was held to have no application to county bonds payable to holders, such bonds being held to be negotiable. Arents v. Commonwealth, 18 Gratton, 750.

The decisions of this court in the German-American Title Company cases do not, as counsel for appellant seem to suppose, apply. It is sufficient to say of those bonds that they were not municipal bonds. They were made by private persons and were not made negotiable at a bank, and were not negotiated.

What matters it, therefore, that the word "negotiable" was not used in the charter, when it prescribed in express terms that the bonds "*shall* be made payable to *bearer?*"

The Green county bonds were issued and delivered to the railroad company and the railroad company placed them on the market and they were sold to the public, the plaintiff buying

some of them.   The purchaser before parting with his money
was bound to ascertain whether there was legislative authority
to issue the bonds.  Having found the act it was next his duty
to ascertain whether the required election had been held and
whether a majority of the votes cast at that election were cast
in favor of the subscription.   He would have ascertained that
the election had been duly held according to law and that a
majority had voted for the subscription.   That the fact was as-
-certained by the county court and so determined and entered
upon the order book of that court.   Having ascertained these
facts, it was not necessary for him to look farther.   These facts
demonstrate conclusively and beyond controversy that the power
to issue the bonds had vested in the county judge.   Whether a
purchaser in fact went to the trouble of ascertaining these facts
or not, he is chargeable with knowledge of them, but chargeable
with nothing more.   That this is the law in this State, and this
country is susceptible of absolute demonstration, if any propo-
sition of law is so.   Section 1537 of Daniel on Negotiable Instru-
ments, together with the authorities cited by the author, is
sufficient.

The law relative to recitals in municipal bonds has no place
in this case.   No court has ever held that any sort of recitals
added any force or effect to the negotiability of a municipal
bond.   If municipal bonds are payable to bearer they are not
less negotiable because they contain no recitals.   Recitals in
municipal bonds are never of the slightest consequence except
for the purpose of creating an estoppel against the municipality
where the municipality undertakes to defend against such bonds
by alleging the nonperformance of some precedent condition
necessary to the vesting of the power to issue the bonds in the offi-
cer who executed them.   It has been held in a number of cases
that the municipalities were estopped to show that the precedent
fact or act did not in fact exist or had not in fact been performed,
where, according to the statute under which the bond was issued,
the officer who executed the bond was also authorized to deter-
mine whether the fact or act existed, or had been performed.

In this case power to issue the bonds vested in the county·
judge of the Green county court and the bonds issued were
within the scope of his delegated authority.   And the bonds
issued being payable to bearer in conformity with the express
provisions of the statute, and appellee, a third party, having
bought the bonds before maturity, for a valuable consideration,
is a bona fide holder and entitled to recover.

There is an attempt made in the answer at this late day,
after a lapse of thirty years, and in the face of the decisions of

this court reported in eighth and tenth of Bush, above cited, to show that the Green county court had no power to subscribe for stock or issue bonds because, as defendant construes the language of section 15 of the charter, power to subscribe was confined to counties through which the "proposed road shall pass;" that is to say, the contention is, that the railroad must first pass through the county, before the county court of such county had jurisdiction to submit the question, of making a subscription to a vote or of subscribing for stock or issuing bonds in discharge of the subscription.

The proposed road according to the charter, passed, through the counties of Henry, Shelby, Spencer, Nelson, Washington, Marion, Taylor, Green, Barren, Allen, Metcalf and Larue. When the language of section 15 is read in connection with other provisions of the charter, especially sections 1 and 12 and the whole scheme as disclosed in the act is considered, it is manifest that the object of the Legislature was to authorize all of said counties to subscribe for stock in the railroad company and issue their bonds respectively for the amount of stock subscribed. It was certainly not contemplated that the road should be built through a county before the county court had jurisdiction under the act to submit the question of subscribing stock to a popular vote and making a subscription if the vote was favorable thereto and issuing the bonds of the county. In the cases before this court, heretofore referred to, no such construction was ever contended for. It remained alone for the learned counsel who are representing the appellant in this case to originate a theory which the learned and astute lawyers who practiced the case reported in 8 Bush, and the two cases in 10 Bush entirely overlooked.

When this case was here before on appeal, after the decision was rendered, the county filed a petition for a rehearing in which much stress was laid on the fact that the bond contained no recital of the various steps necessary to the vesting of the power to issue the bonds in the county court. That is, that the bonds do not recite that an election had been held under the act at which a majority of the votes cast were in favor of the subscription, that a subscription for stock had been made and that the bonds were issued in discharge or payment of the subscription, etc.

The recital of the existence of those facts or the due performance of those acts, in the face of the bonds, is not at all necessary to their validity.

It is essential to the validity of the bonds that an election should have been held and that a majority of the votes cast

Green County v. Shortell.

should be in favor of making a subscription; otherwise, the power conferred by the act could not vest in the county court. It is sufficient if the facts appear upon the records of the county court. And the existence of all the precedent conditions necessary to the vesting of the power in the county court appears by express averments of the answer and the copies of the orders of the county court filed with it and made part of it. The county court ascertained and determined that the election was duly held at the several voting places in Green county according to law, on July 3, 1869; that a majority of the qualified voters decided at that election that the county should subscribe for $250,000 of the capital stock of the railroad company and the subscription was made on the order book of the county court as were also the orders for the issual of the bonds.

There were no recitals in the Daviess county bonds, but they were all held valid, except the over-issue. The order of the county court in that case submitted the question of subscribing for $250,000 of stock in the railroad company and the order of the county court directed the issual of $250,000 of bonds in discharge of that subscription. But the county judge issued bonds to the amount of $320,000, being $70,450 in excess of the amount authorized. This excess was held void by this court and by the Supreme Court of the United States on the ground that no power vested under the act and vote to issue more than $250,000 of bonds. (Daviess County Court v. Howard, 13 Bush, 101, and Daviess County v. Dickinson, 117 U. S., 657.)

There is a line of cases in the supreme court and those cases have been generally followed, holding that in a contest between a bona fide holder of municipal bonds payable to bearer and the municipality, if the bond contains a recital that a precedent condition has been performed or exists, and the officer who executes the bond is authorized by law to ascertain and decide, whether the condition has been performed, or the fact exists and he certifies in the face of the bonds that it does exist or has been performed, then the municipality will be estopped, as against such holder, to deny or dispute the recital, though the recital may be in fact untrue. See Lydne v. County, 16 Wallace, 13, and the other cases collected in the opinion in the National Life Ins. Co. v. Board of Education, 62 Fed. Rep., 792.

Learned counsel for the county seem to suppose that in the absence of recitals in the bonds which create an estoppel that then in such case, notwithstanding the fact that the bonds are negotiable in form and are conclusively shown to have been issued by authority of law, are nevertheless no more than mere promissory notes, and are now open to all the defenses which

might be made against such contracts. · But this is not law. If there was power to issue the bonds they are perfect obligations and being negotiable in form the holder is entitled to recover except as there was lack of power to issue the bonds and "bad faith," and no want of power is shown or bad faith alleged. Daniel so states the law and supports his statement by the highest English and American authorities.

It is only in those cases where in fact the power to issue the bonds did not vest in the municipal agency, but where that agency was authorized to determine and declare whether or not the act or condition upon which the vesting of the power was made to depend, had been performed or existed, and did determine that the act or fact existed, and so certified in the face of the bonds and being the agency authorized to execute and deliver the bonds, that the municipality has been held to be estopped to dispute the fact certified in the bonds as against a bona fide holder.

The only defense open to a municipality when sued on its bonds, payable to bearer, is that of want of power to issue them. If power to issue the bonds is shown to have vested in the agency of the municipality, and that agency executes the power conferred, and does not exceed it, that is the end of the controversy, and the contracts are perfect obligations of the municipality.

The county, as the court sees, is here presenting two inconsistent defenses: First, it contends that the county court did not make any subscription or issue any bonds of the county; then, it turns about and in the next breath says the county made a subscription and issued the bonds, but it did so upon conditions, which conditions have never been performed and the bonds for that reason are void.

It does not even take the trouble to say that either one of these supposed defenses is *true*, or that it does not know which of them is true.

They are utterly inconsistent. It can not be that there was no power and at the same time that there was power.

If the county judge sitting alone as the county court had no power to receive and entertain the request of the railroad commissioners to submit the question to a vote of the people of subscribing the stock, no power to order an election to be held, no power to make the subscription, and no power to issue the bonds, he certainly had no power to impose the conditions. If he had power as contended by the county, to impose the conditions, he must have had power to have done all the other acts which are now assailed as *ultra vires* and void.

Counsel for appellant in the oral argument expressly admitted and conceded it to be a fact that Green county for several years immediately after the issual of these bonds had levied and collected taxes for the payment of the interest and had regularly paid the interest on them. And in the brief, signed by all the counsel for appellant, it is conceded as a fact "that the coupons for interest were for a few years paid."

It is true that if there was no power in the Green county court to issue the bonds, the levy of taxes to pay the interest on the bonds and the payment of the taxes by the people and the disbursement of the taxes collected in the payment of the coupons "for a few years," or any time, would not amount to or constitute a ratification, or create an estoppel, that would preclude the county from afterwards showing that there was no power to issue the bonds. To hold otherwise would be equivalent to saying that the county might by such indirect acts make a contract which it had not the power to make directly. Marsh v. Fulton Co., 10 Wallace, 696.

But the levy and collection of taxes for the purpose of paying interest on the bonds and the payment of the taxes by the people and the disbursement of the tax so collected in payment of the interest coupons "for a few years," does amount to an effectual ratification, and does create an estoppel in pais, if power to issue the bonds vested in the county court and judge and that delegated authority was executed in an irregular or imperfect manner.

As there was undoubtedly power, under the charter and vote to issue the bonds, vested in the Green county court and Judge Barnett, if the power was in any respect irregularly executed or performed, the levy of taxes by the county court to pay interest on them, and the collection and disbursement of it in payment of the interest on the bonds "for a few years" after their issue, ratifies such irregular execution of the power, and effectually estops the county to set up or rely upon such irregularities, no matter what they may be. Marshal County v. Schenek, 5 Wallace, 772; Campbell v. City of Kenosha, 5 Wallace, 195; Burr v. Chariton County, 12 Fed. Rep., 604; Mills v. Gleason, 11 Wis., 470, 78 Am. Decs., 721; Brown v. Bon Homme County, 46 N. W. Rep., 173; Beach on Pub. Corps., sec. 904.

It seems to us that public policy, the highest considerations for the public welfare and the commercial credit of the State, all dictate that there should be no modification of the law relative to the integrity of municipal bonds as it has existed in the State since the decision of this court in Maddox v. Graham and Knox, supra. If it were now held that bonds payable to bearer,

bought by a third person, before maturity, for a valuable con-
sideration, where there was legislative authority and a vote of
the people authorizing their issue, and not ultra vires, were, in
effect nonnegotiable, were open to defenses, it would impair the
credit of every municipality in the State. It would render dif-
ficult if not impracticable the sale of any such securities in the
commercial markets of the country. Certainly no such paper
could ever hereafter be negotiated at all except, as there had
been prior to the issue of such bonds a litigation, either by
proceedings for a mandamus to compel their issue, or by a suit
in equity to enjoin their issue, whereby every question touching
the validity of their issue could be rendered *res adjudicata.* No
doubt the excellent credit now enjoyed by the municipalities of
Kentucky is due mainly, if not entirely, to the fact that ever
since the decision of this court in Maddox v. Graham and Knox.
the principles of that case have been steadily adhered to, and
the law of Kentucky relating to municipal bonds considered to
be substantially the same as the law relating to such securities
as declared by the Supreme Court of the United States.

Many of the cities and counties of this State have within the
past five years negotiated their bonds for very large amounts,
bearing four per cent. interest at a price from one to five per
cent. above par. The city of Louisville during the present month
(April, 1903) has negotiated a large amount of its bonds bear-
ing three and one-half per cent. interest at a price above par.
These facts are so notorious that it is presumed, though they
do not appear in the record, a statement of them is not inap-
propriate.

Therefore, not only does the law, but public policy, also, as
we most respectfully submit, require an affirmance of the judg-
ment of the Green Circuit Court in this case.

## CITATIONS.

An act to incorporate the Cumberland and Ohio Railroad Com-
pany, approved February 24, 1869. Acts 1869, vol. 1, pp. 463,
474; Shortell v. Green County, 22 Ky. Law Rep., 1010, 23 Ky.
Law Rep., 144; Mercer County Court and Garrard County Court
v. Ky. River Navigation Co., 8 Bush, 300; Slack v. Maysville,
&c., R. R. Co., 13 B. Mon., 1; Shelby County Court v. C. & O.
R. R. Co., 8 Bush, 209; C. & O. R. R. Co. v. Washington County
Court, 10 Bush, 564; C. & O. R. R. Co. v. Barren County Court,
10 Bush, 604: Bowling Green, &c., R. R. Co. v. Warren County
Court, 10 Bush, 711; Provident Trust Co. v. Mercer County, 170
U. S., 602; Daviess County Court v. Howard, 13 Bush, 101;
Daviess County Court v. Dickinson, 117 U. S., 657; Gill v. Cubitt,

3 Barn. & Cres., 466; Goodman v. Harvey, 4 Ald. & El., 870; Swift v. Tyson, 16 Peters, 1; Goodman v. Simonds, 22 How., 96; Murray v. Lardner, 2 Wall., 110; Lynde v. County, 16 Wallace, 13; National Life Insurance Co. v. Board of Education, 62 Fed. Rep., 792, court of appeals case, and the authorities cited; Mercer County v. Hackett, 1 Wallace, 83; Thompson v. Lee County, 3 Wallace, 331; Lexington v. Butler, 14 Wallace, 295; Daniel on Negotiable Instruments, secs. 1500, 1501, 1503, 1537; Maddox v. Graham and Knox, 2 Met., 56; Greenwell v. Hayden, 78 Ky., 323; Arents v. Commonwealth 18 Gratton, 750; Marsh v. Fulton Co., 10 Wallace, 676; Marshall Co. v. Schenck, 5 Wallace, 772; Campbell v. City of Kenosha, 5 Wallace, 195; Burr v. Chariton Co., 12 Fed. Rep., 604; Mills v. Gleason, 11 Wis., 470, 78 Am. Dec., 721; Brown v. Bon Homme Co., 46 N. W. Rep., 173; Beach on Pub. Corp., sec. 904.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The Cumberland & Ohio Railroad Company was incorporated by an act approved February 24, 1869 (1 Sess. Acts, 1869, p. 463, c. 1578). It was vested with power to construct and operate a railroad from the Ohio river, through the counties of Henry, Shelby, Washington, Nelson, Marion, Taylor, Green, Barren and Allen, to a point on the boundary line between the States of Kentucky and Tennessee, "to be selected by the president and directors, about due north from the town of Murfreesboro, Tennessee, with a view of connecting with the southern systems of railways converging at Nashville, Tennessee." See Charter, section 12 (1 Sess. Acts, 1869, p. 468, c. 1578). Any city, town or county through which the proposed road should pass was authorized to subscribe stock in the railroad company in any amount it desired, and to issue bonds therefor, payable to bearer, with coupons attached, bearing interest not exceeding 6 per cent., payable in the city of New York at not more than thirty years from date; but, before any such subscription should be valid, the question of making it should be submitted to the qualified voters of the munic-

ipality, and a majority of the qualified voters voting at
the election should be in favor of the subscription. Id.,
p. 471, c. 1578, section 15. The charter authorized subscrip-
tions to be made upon such conditions as might be deemed
fit. In construing it in Shelby County Court v. Cumber-
land & Ohio Railroad Co., 71 Ky., 209, this court said: "The
president and directors of the railroad company are not
only expressly vested by the twelfth section of the act of
1869, supra, 'with all the powers and rights necessary to
the construction' of the road, but the sixteenth section pro-
vides that the company 'shall have all the powers and priv-
ileges conferred' on the 'Louisville & Nashville Railroad
Company by the laws of Kentucky for constructing and op-
erating their said road not herein specified and granted,
and not in conflict with the term of this charter;' and,
by section 22 of the charter of the Louisville & Nashville
Railroad Company, the county courts of counties through
which that road passes are expressly authorized to submit
to the voters of their counties propositions for subscribing
for stock in that corporation, 'if by them deemed expedient,
in such manner as they may direct and prescribe.' And
by the sixth section of an act to amend the same charter,
approved January 17, 1856 (1 Acts 1855-56, p. 184, c. 20),
counties, towns, cities and other corporations are author-
ized, in express terms, to subscribe for stock in that road,
'with such terms and time of payment, conditions annexed,
and kind of payment that may be set forth in the subscrip-
tion.' "

At its June term, 1869, the following request was filed
in the Green county court: "We, the undersigned commis-
sioners of the Cumberland & Ohio Railroad Company, here-
by request that the county court of Green county submit
to a vote of the qualified voters of said county the question

whether said county shall subscribe, for and on behalf of
said county, and in pursuance of the provisions of the char-
ter of said railroad company, two hundred and fifty thou-
sand dollars to the capital stock of said company, payable
in the bonds of said county, having twenty years to run,
and bearing six per cent. interest from date, upon the con-
ditions that said company shall locate and construct said
railroad through Green county, and within one mile of the
town of Greensburg, in the said county, and shall expend
the amount so subscribed within the limits of Green county,
and also upon the further condition that said bonds shall
not be issued, or said county pay any part of either prin-
cipal or interest on said amount subscribed as aforesaid,
until said county of Green shall be fully and completely
exonerated from the payment of the capital stock sub-
scribed by the county court of said county, for and on be-
half of said county, to the Elizabethtown and Tennessee
Railroad Company." The county court thereupon made the
following order: "Whereas, the commissioners of the Cum-
berland & Ohio Railroad Company, by virtue of the author-
ity delegated to them by the charter of said company, have
requested the county court of Green county to order an
election in said county of Green, and submit to the quali-
fied voters of said county the question whether said coun-
ty court shall subscribe, for and on behalf of said county,
two hundred and fifty thousand dollars to the capital stock
of the Cumberland & Ohio Railroad Company, having twen-
ty years to run, and bearing six per cent. interest from
date, and payable in the bonds of said county, upon con-
ditions that said company shall locate and construct said
railroad through the county of Green, and within one mile
of the town of Greensburg, in said county, and shall ex-
pend the amount so subscribed within the limits of Green

county, and also upon the further condition that said bonds shall not be issued, or said county pay any part of the principal or interest on said amount subscribed to said Cumberland & Ohio Railroad Company, until said county of Green is fully and completely exonerated from the payment of the capital stock voted by said county, and authorized to be subscribed by said Green county court to the Elizabethtown & Tennessee Railroad, or any part of the interest thereon. It is therefore ordered by the court that an election by the qualified voters of Green county, at the several voting places in said county, be held and conducted by the several officers, as prescribed by law, holding elections, on the 3d day of July 1869, to vote on the question as to whether or not the said county court of Green county, shall, for and on behalf of said county, subscribe two hundred and fifty thousand dollars to the capital stock of the said Cumberland & Ohio Railroad, conditioned and to be paid as above stated." The election was held, resulting in a vote in favor of the subscription, and at its June term, 1870, the county court entered the following order: "Whereas, in pursuance of an order of this court made on the 17th day of June, 1869, an election was held in said county of Green on the 3d day of July, 1869, at the several precincts in said county, and it appearing that a majority of the qualified voters at said election decided that the county of Green should subscribe for two hundred and fifty thousand dollars of the capital stock of the Cumberland & Ohio Railroad Company: Now, it further appearing that said election was held in conformity with the law, and in accordance with the provisions of the charter of the company, now, therefore, I, Thomas R. Barnett, the presiding judge of the Green county court, by virtue of the authority in me vested by law, and to carry out the wishes of said voters,

do hereby subscribe for two hundred and fifty thousand dollars of the capital stock of the Cumberland & Ohio Railroad Company, for and on behalf of the said county of Green, which subscription is to be paid in the bonds of said county as prescribed in said order of submission, and this subscription is made with the condition set out in the order of this court ordering said election, and now on record in the office of this county." At its October term, 1871, this further order was made: "On motion of E. H. Hobson, director of the Cumberland & Ohio Railroad, it is ordered that Z. F. Smith, president of the Cumberland & Ohio Railroad, be, and he is hereby, authorized to have printed for the county of Green the bonds, to the amount of two hundred and fifty thousand dollars, the amount of subscription of Green county to said railroad, in the following denominations, to-wit (the same to be conditioned as specified in the order submitting the vote of the said county): 125 bonds at $1,000, $125,000; 200 bonds at $500, $100,000; 250 bonds at $100, $25,000." At the January term, 1872, bonds to the amount of $1,300 were ordered to be issued, and at the February term, $5,000 more. At the April term, 1872, the following order was entered: "Application was this day made to the presiding judge of the county court of Green county by the president and board of directors of the Cumberland & Ohio Railroad Company to issue the balance of the bonds of said county, to the amount of the subscription of said county of Green, to the said Cumberland & Ohio Railroad Company; and, the court being sufficiently advised, it is ordered by the court that the balance of said bonds be, and they are hereby, ordered to be issued, to be signed by the judge of said county court of Green county, and countersigned by the clerk of said court, as required by the charter of said company." Under this order the bonds here

in controversy were issued. They read as follows: "United
States of America. County of Green, State of Kentucky.
For the Cumberland and Ohio Railroad. Twenty years
after date, the county of Green, in the State of Kentucky,
will pay to the holder of this bond the sum of ——— with
interest thereon at the rate of six per cent. per annum,
payable semi-annually upon presentation of the proper cou-
pons hereto attached, principal and interest, being payable
at the Bank of America, in the city of New York.' In tes-
timony whereof, the judge of the said county of Green has
hereunto set his hand and affixed the seal of said county,
on the 1st day of April, A. D. 1871, and caused the same
to be attested by the county clerk, who has also signed
the coupons hereto attached."

Appellee, James D. Shortell, is the holder of six of these
bonds, each for the sum of $1,000, and of one bond for $500.
He filed this suit against the county of Green to recover
on the past-due coupons. The county pleaded in defense
of the suit the conditions above set out. On the former ap-
peal a demurrer was sustained to the answer on the ground
that it did not state the facts relied on sufficiently to raise
the question aimed to be presented. See Shortell v. Green
County, 22 R., 1010, 59 S. W., 522, 23 R., 144, 63 S. W., 979.
On the return of the case to the circuit court, the answer
was amended so as to set out all the facts above stated,
and it was pleaded that the conditions upon which the
subscription was made had not been complied with; that
the Cumberland & Ohio Railroad failed to erect or construct
a line of railroad through Green county, or within one
mile of the town of Greensburg; that there is no railroad
now, and never was any railroad, running through Green
county; that no part of the amount subscribed was ever
spent in Green county in the construction of any railroad

therein, and that the county was not exonerated from the payment of the capital stock voted by it to the Elizabethtown & Tennessee Railroad; that the conditions prescribed in the subscription were all disregarded and never fulfilled; and that the bonds were issued without authority of law, in violation of the rights of the taxpayers of Green county. The court sustained a demurrer to the answer, and the defendant appeals.

It is conceded that the appellee is a bona fide purchaser of the bonds, without notice of the defense now set up by the county, and the question to be determined is whether, notwithstanding this, the defense relied on is good against him. In determining this question, an important distinction is made by the authorities between those bonds which contain recitals certifying that the preliminary requisites for the issue of municipal bonds have all been complied with, and bonds containing no such recitals. Thus in Citizens' Savings Association v. Perry County, 156 U. S., 701, 15 Sup. Ct., 550, 39 L. Ed., 585, the United States Supreme Court said: "But it is urged that, the bonds having been executed and issued by those whose duty it was to execute and issue them whenever that could be rightfully done, the county is estopped to plead their invalidity as between it and the bona fide purchaser for value. This argument would have force if the material circumstances bringing the bonds within the authority given by law were recited in them. In such a case, according to the settled doctrine of this court, the county would be estopped to deny the truth of the recital as against bona fide holders for value. But this court in Buchanan v. Litchfield, 102 U. S., 278 (26 L. Ed., 138), upon full consideration, held that the mere fact that the bonds were issued without any recital of the circumstances bringing them within the pow-

er granted was not of itself conclusive proof, in favor of a bona fide holder, that the circumstances existed which authorized them to be issued." See, to same effect, Town of Coloma v. Eaves, 92 U. S., 484, 23 L. Ed., 579; School District v. Stone, 106 U. S., 183, 1 Sup. Ct., 84, 27 L. Ed., 90; Carroll County v. Smith, 111 U. S., 556, 4 Sup. Ct., 539, 28 L. Ed., 517; Hopper v. Town of Covington, 118 U. S., 148, 6 Sup. Ct., 1025, 30 L. Ed., 190. This doctrine was recently reaffirmed in the case of Provident Life & Trust Co. v. Mercer County, 170 U. S., 593, 18 Sup. Ct., 788, 42 L. Ed., 1156. The bonds in question containing no recitals as to the authority of the officers issuing them, or as to the performance of the preliminaries requisite to their issuance, there is no estoppel on the county to plead the truth of these matters. Municipal corporations are simply agents of the State for local purposes, and possess merely such powers as are expressly given, or may be properly implied because essential to effectuate what is expressly granted. 1 Dillon on Municipal Corporations, section 189; Ottawa v. Carey, 108 U. S., 110, 2 Sup. Ct., 361, 27 L. Ed., 669. The officers of a municipality have only such powers as are conferred upon them by law, and all persons dealing with them are required to take notice of the extent of their authority, because all persons are required to take notice of the laws of the land. Mayor of Baltimore v. Reynolds (Md.) 83 Am. Dec., 535; Marsh v. Fulton County, 10 Wall., 683, 19 L. Ed., 1040. When the bonds of Green county were offered upon the market, every person buying them was put upon notice that the counties of this State had no authority to issue bonds of this character by the general laws of the State, and that the bonds in question were not binding on the county unless issued by special legislative authority. It

was therefore incumbent upon all before buying these bonds
to learn by what authority they were issued. It was shown
by the bonds that they were issued "for the Cumberland and
Ohio Railroad." They were made payable to the holder.
When the purchaser looked to the charter of the Cumber-
land & Ohio Railroad, he was informed by it that the county
court could only issue the bonds of the county after the
question of making the subscription had been submitted
to the qualified voters, and a majority of them had voted
in favor of the subscription. He was also informed that the
county might make a subscription on such conditions as it
saw fit. There being nothing on the face of the bonds to
advise him on these matters, it was incumbent on him, be-
fore buying paper which was invalid in the absence of ex-
press authority in the officials, to look to the record, and
see under what circumstances these bonds had come into ex-
istence. When he looked to the record of the Green county
court, which, under the act, he was bound to know would
set forth the facts, he was apprised that the subscription
was made upon the conditions that the company would lo-
cate and construct its railroad through Green county, and
within one mile of the town of Greensburg, and would ex-
pend the amount so subscribed within the limits of Green
county, and also upon the further condition that the bonds
should not be issued, or the county pay any part of either
principal or interest, until it was fully exonerated from the
subscription to the Elizabethtown & Tennessee Railroad
Company. He was also notified that, in the order of the
court under which the vote was taken, it was expressly
submitted whether the county would subscribe $250,000 to
the capital stock of the Cumberland & Ohio Railroad, "con-
ditioned and to be paid as above stated," and that in the
order making the subscription it was stipulated, "This sub-

scription is made with the condition set out in the order
of this court ordering said election and now on record in
the office of this county." He was further notified that,
in the order directing the bonds to be printed, it was pro-
vided, "the same to be conditioned as specified in the order
submitting the vote of the said county." These orders of
the county court were the authority under which the bonds
were issued, and the only authority which the officers is-
suing them had. They plainly disclosed the fact not only
that the subscription was conditional, but that it was "to
be paid as above stated," and that the bonds were "to be
conditioned as specified in the order submitting the vote."
The county officials had no authority to issue a bond not
conditioned as specified in the order submitting the vote,
for the subscription was expressly conditioned, and only
to be paid on condition. If the county officials had fol-
lowed the order of the county court, and issued bonds con-
ditioned as specified in the order submitting the vote, the
bonds, on their face, would have informed every purchaser
of the conditions on which they were voted. But when the
county officials neglected to do this, and issued instead a
naked promise to pay, without any recital of the authority
under which it was issued, the purchaser was put upon
inquiry as to their authority, and their want of authority
is as available against him as the facts pleaded would have
been, had they followed their authority, and conditioned the
bonds as specified in the order submitting the vote. In ex-
ecuting the bonds in their present form, the county officials
may have supposed that the rights of the county were suf-
ficiently protected by the orders entered in the county court.
The rule on the subject is thus stated in Hainer on Munici-
pal Securities, section 413: "Where bonds purporting to
have been issued by a municipality contain no recitals of

an election, or of proceedings and orders of the munici-
pality, but are mere naked promises to pay, every purchaser
and holder of the securities is chargeable with notice of
whatever appears upon the face of the records. If in such
case it appears upon the face of the records that the com-
missioners had no authority to issue the bonds, the munici-
pality could avail itself of that want of authority as a de-
fense to an action even by a bona fide holder. When the
laws or constitutional provisions relating to the issuance of
county bonds point to the county records as evidence of
facts required to authorize their issuance, such records, and
not the recitals in the bonds, must be looked to by all per-
sons proposing to deal in them." In Lewis v. Bourbon
County Com'rs., 12 Kan., 216, the court, by Judge Brewer,
said: "Every one dealing with the commissioners or pur-
chasing such securities must take notice of the law under
which they act. . . . That these bonds are negotiable
paper does not alter the case. The law merchant does not
make the act of an agent proof of his authority." In Veeder
v. Town of Lima, 19 Wis., 287, the court, by Chief Justice
Dixon, said, after referring to similar statutory provisions
as in the act referred to: "These provisions mark very
clearly to my mind the intention of the Legislature that all
persons negotiating for the bonds, whether directly with
the supervisor or with third parties, must look to the rec-
ords, and govern themselves accordingly. They are public
records, open at all times to inspection; or, if in any cases
it is inconvenient or impracticable, transcripts can be had
at a trifling expense." In Cooley on Constitutional Limita-
tions, in a note to side page 217, after collecting many au-
thorities as to the effect of recitals in such bonds, and quot-
ing at length from Gould v. Town of Sterling, 23 N. Y.,
464, which is to the effect that the municipality is not

bound by recitals in bonds, if unauthorized, the distin-
guished author says: "It is, of course, impossible to recon-
cile these authorities, but the doctrine in the case of Gould
v. Town of Sterling appears to us to be sound, and that,
wherever a want of power exists, a purchaser of the security
is chargeable with notice of it, if the defect is disclosed by
the corporate records, or, as in that case, by other records,
where the power is required to be shown."

It is insisted, however, for appellee, that, by the terms
of the subscription, it was made upon the condition that the
bonds should not be issued, or the county pay any part of
either the principal or interest of the amount subscribed,
until the county was exonerated from the payment of its
subscription to the Elizabethtown & Tennessee Railroad.
It is urged that this part of the condition was made pre-
cedent to the issuing of the bonds, but that the rest of the
condition, to the effect that the company should locate and
construct its road through Green county, or within one
mile of Greensburg, and expend the amount subscribed in
Green county, was not made a condition precedent to the
issue of the bonds, and therefore only an obligation was
imposed upon the railroad company, for the performance of
which the county only looked to it. It is also insisted that
it is shown by the record that the subscription to the
Elizabethtown & Tennessee Railroad was void. We can not
concur in either of these conclusions. The meaning of the
contract, taken as a whole, is that the subscription is upon
the condition that the company shall locate and construct
its railroad through Green county, and within one mile of
Greensburg, and expend the amount subscribed in the
limits of Green county; and the further condition is added
that the bonds are not to be issued, or anything paid on ac-
count of the subscription, until the county is exonerated

from its former subscription to the Elizabethtown & Tennessee Railroad. In other words, the bonds are not to be issued until this release is made, and after the release is made the bonds may be issued, but they are to be subject to the condition that the company should locate and construct its road as above set out. The railroad authorities, in applying to the county court for a vote on this subject, intended by their petition for the people of the county to understand that, before any liability was created, the old subscription to the Elizabethtown & Tennessee Railroad was to be out of the way entirely, and that after this was done the promise of the county to pay was to be conditioned on the location and construction of the road through Green county, and within one mile of the town of Greensburg. In construing the contract, the court must bear in mind that it was a proposition submitted by the railroad company to be voted on by the people of Green county, and that construction must be adopted which was clearly contemplated by the parties at the time. The railroad company intended the people to understand, and the people understood, from the paper when they voted on the subscription ,that they were to get a railroad through the county, and that, if they did not get it, their subscriptions, being "conditioned and to be paid as above stated," would not be binding upon the county. That this was the understanding of the parties is conclusively shown by the order of the county court, made on the motion of the railroad company, directing the bonds to be printed, "the same to be conditioned as specified in the order submitting the vote of the said county." As to the matter of the subscription to the Elizabethtown & Tennessee Railroad, the record shows the following order of the county court, made on May 20, 1868: "This day T. R. Barnett, presiding judge, and D.

T. Towles, clerk, of the Green county court, produced their certificate in words and figures as follows, viz.: 'We, T. R. Barnett, presiding judge, and D. T. Towles, clerk, of the Green county court, duly authorized to compare the pollbooks of Green county, certify that at an election held in said county at the various voting places in said county on the 16th day of May, 1868, on the question whether the county court of Green county shall, for and on behalf of said county, subscribe for 3,000 shares of the capital stock of the Elizabethtown & Tennessee Railroad Company, to be paid for in the bonds of said county, payable in twenty years, and bearing six per cent. interest, payable semi-annually in the city of New York, with interest coupons attached thereto, and that 586 votes were cast for said subscription, and 204 against said subscription. May 20th, 1868. T. R. Barnett. D. T. Towles.' It is therefore ordered by the court that the said vote be and is now entered of record as follows, to-wit: 586 votes were cast for said subscription, and 204 votes were cast against said subscription, showing that there is a majority for said subscription of 382 votes. It is now, therefore, ordered that the clerk of this court, for and on behalf of the county of Green, make said subscription on the terms specified in the order submitting the question to a vote as aforesaid."

It is insisted that the order is void because the county court, instead of making the subscription, delegated this duty to its clerk; and Mercer County Court v. Kentucky River Navigation Company, 71 Ky., 300, is relied on. But in that case the order of the county court appointing the commissioner to make the subscription contained these words: "But said commissioner is directed not to subscribe said stock, or any part thereof, until said company shall, by proper orders entered on the books, agree that no part

of their subscription shall be mortgaged under the provisions of the tenth section of the act of the Kentucky Legislature incorporating said company, nor shall the county of Mercer be in any manner bound for the subscription herein decreed to be made until said company has accepted it upon the conditions herein set forth." It was held that the power of the county court to make the subscription, being conferred by law, must be exercised by it, and that it could not confer upon a commissioner the power to determine important questions submitted for its determination. The ground of the decision was that there was no subscription unless certain things were done, and the commissioner was to determine whether these things were done, and thus, by the exercise of his discretion, determine whether the subscription should be made, whereas the law had vested this discretion alone in the county court. But the case before us is wholly different. No discretion is conferred upon the county clerk. He is simply directed absolutely to do a clerical act. County courts can not conveniently sign subscription papers or documents of this kind, and for convenience such bodies usually act by a commissioner or agent in the discharge of the mere clerical duty of signing the papers. Such a course of doing the business has been often sustained. 23 Am. & Eng. Ency. of Law (2d Ed.) 365; Miller v. New York, 109 U. S., 385, 3 Sup. Ct., 228, 27 L. Ed., 971; Birdsall v. Clark (N. Y.) 29 Am. Rep., 105; Burrill v. Nahant Bank (Mass.) 35 Am. Dec., 395; Dillon on Mun. Corp., section 60. As the case is here only on demurrer, the question is not presented on whether the subscription was in fact made.

Again it is urged that four and one-half miles of railroad have been built in Green county by a successor of the Cumberland & Ohio Railroad Company, and this is relied on

as a compliance with the condition of the contract, under
the case of Providence Trust Co. v. Mercer County, 170 U.
S., 602, 18 Sup. Ct., 788, 42 L. Ed., 1156; but that case
rests on the peculiar facts there shown, it being held, in
effect, that the contract was substantially complied with.
This is not the case here. There has been' no substantial
compliance with the contract. The road was to be built
from the Ohio river to the Tennessee line, and the sub-
scription was made on the condition that it was to be paid
when the road was constructed through Green county. It
has never been constructed through Green county, nor does
its construction in any manner approximate a fulfillment
of the conditions. To hold that there has been a compliance
with the terms of the contract would be to give no effect
to the natural meaning of the language used. Peoples'
Ferry Co. v. Balch, 74 Mass., 303; Memphis, &c., Ry. Co. v.
Thompson, 24 Kan., 170.

The fact that the county paid the interest on the bonds
for a few years does not estop it to show their invalidity.
Norton v. Shelby County, 118 U. S., 425, 6 Sup. Ct., 1121,
30 L. Ed., 178; District Tp. of Doon v. Cummins, 142
U. S., 366, 12 Sup. Ct., 220, 35 L. Ed., 1044; Mercer County
v. Providence Life & Trust Co., 72 Fed., 623, 19 C. C. A.,
58; Graves v. Saline Co., 161 U. S., 373, 16 Sup. Ct., 526,
40 L. Ed., 732.

We, therefore, conclude that, upon the facts shown, the
county of Green is not liable upon the bonds sued on, and
that the court should have overruled the demurrer to the
answer. As the case was submitted both on a demurrer
and a motion for judgment, notwithstanding the answer,
we will not now direct a judgment to be entered for the
defendant. As the bonds in contest contain no recitals,
no opinion is intimated on the conflict of authority referred

Vol. 116]        APRIL TERM, 1903.        135

to by Judge Cooley as to whether municipal officers issuing bonds without authority can estop the municipality by reciting in the bonds that they have such authority.

Judgment reversed and cause remanded for further proceedings not inconsistent herewith.

Whole court sitting, except Judge Settle, who declined to sit in the case.

Petition for rehearing by appellee overruled.