## QUINLAN v. GREEN COUNTY, KY.

(Circuit Court of Appeals, Sixth Circuit. December 19, 1907.)

### No. 1,440.

1. COUNTIES—CONDITIONS PRECEDENT TO ISSUE OF BONDS—PRESUMPTION AS TO PERFORMANCE.

A judge of a county court in Kentucky, acting under statutory authority, called a special election to determine whether or not the county should subscribe for a certain amount of the stock of a railroad company and issue its negotiable bonds for the amount, the subscription to be subject to certain stated conditions, one of which was that it should not be made

157 F.—3

nor the bonds issued "until said county * * * is fully and completely exonerated from the payment of the capital stock voted by said county and authorized to be subscribed" to another railroad company. The proposition having been carried, the judge subsequently entered an order reciting that, "the court being sufficiently advised," the bonds should issue, and they were thereupon issued and delivered, and the stock received by the county. At that time some years had elapsed since the county voted to subscribe to the stock of the other railroad company, and the clerk had been authorized to make the subscription, but no further steps had been taken to that end. *Held*, in an action against the county by a bona fide holder of bonds so issued, that the presumption arising from the subscription and issuance of the bonds, and the order of the judge authorizing the same, the condition precedent had been fulfilled, and the county exonerated from liability on account of its prior subscription was not overcome but was strengthened, where, although more than 30 years had elapsed, no contract completing such subscription had ever been made or demanded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1943.]

2. SAME—CONDITION OR COVENANT—BONDS IN AID OF RAILROAD.

Where a proposition adopted by a vote of a county to subscribe for stock of a railroad company, to aid in the construction of its proposed road and to issue negotiable bonds of the county therefor, contained a provision that the subscription should be on condition that the company should locate and construct its road through the county, and should expend the amount subscribed within the limits of the county, such provision did not create a condition precedent to the issuance of the bonds, but the acceptance of the subscription imposed an obligation on the company to perform the condition subsequently, the failure to fully comply with which would not invalidate the bonds in the hands of a bona fide holder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1987.]

3. CONTRACTS—CONSTRUCTION—CONDITIONS PRECEDENT.

The question whether the performance of a stipulation in a contract is a condition precedent to the performance of other stipulations in it depends upon the order in which the parties intend the several stipulations to be performed. The calling of a provision or stipulation a condition is not conclusive, and if from the contract or other circumstances it is seen that it was not the intention of the parties that its performance should be a condition precedent it will not be held to be such.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1015.]

4. MUNICIPAL CORPORATIONS—BONDS—PRESUMPTION OF VALIDITY—ABSENCE OF RECITALS.

The absence of a recital in municipal bonds that the conditions to their issue have been complied with does not deprive them of their character of negotiable instruments, nor of the benefit of the ordinary presumptions which attend such instruments.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1956.]

Lurton, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

This is an action brought by the plaintiff in error to recover the contents of certain bonds and coupons alleged to have been issued by the defendant in error in 1872, in payment, with other like bonds, for shares of stock of the Cumberland & Ohio Railroad Company. The plaintiff claims to be the holder for value and owner of the bonds and coupons which are the subject of the controversy. By stipulation, the case was tried by the court without a jury. The court made a finding of facts, and declared its conclusion of law thereon.

The result of its conclusion was that the plaintiff was not entitled to recover, and judgment was entered accordingly. The plaintiff thereupon sued out this writ of error.

By an act of the Legislature of Kentucky, passed February 24, 1869, the above-named railroad company was incorporated and authorized to construct a railroad from a point on the Ohio river to a point on the boundary line between Kentucky and Tennessee. Acts of Kentucky 1869, vol. 1, p. 463, c. 1578. In the course of its authorized route was Green county, the defendant in this suit. With a view, apparently, to enable the counties along its route to aid the railroad company in the construction of its road, authority for that purpose was conferred by the act as follows: "Sec. 15. That any city, town or county through which said proposed road shall pass is hereby authorized to subscribe stock in said railroad company in any amount any such city, town, or county may desire; and that the county court of any such county is authorized to issue the bonds of their respective counties in such amount as the county court may direct; and the chairman and board of trustees, or mayor and aldermen of any town, and the mayor and aldermen or council of any city, are hereby authorized to issue the bonds of their respective towns or cities in like manner. All said bonds shall be payable to bearer, with coupons attached, bearing any rate of interest not exceeding six per cent. per annum, payable semi-annually in the city of New York, payable at such times as they may designate, not exceeding thirty years from date; but before any such subscription on the part of the city, town or county shall be valid or binding on the same, the mayor and aldermen, or chairman and board of trustees of any town, the mayor and aldermen or council of any city, and the county court of any county having jurisdiction, shall submit the question of any such subscription to the qualified voters of such city, town or county in which the proposed subscription is made, at such time or times as said chairman and board of trustees, or mayor and aldermen of any town, mayor and aldermen or council of any city, or the county court of any county, as aforesaid, may, by order, direct; and should a majority of the qualified voters voting at any such election vote in favor of subscribing said stock in said railroad company, it shall be the duty of such county court, trustees, or other authorities aforesaid, to make the subscription in the name of their respective cities, towns or counties, as the case may be, and proceed to have issued the bonds to the amount of such subscription as hereinbefore directed." And it was further provided that the application for such proceedings might be made to the judge of the county court instead of the court; whereupon he was vested with the same power. And the railroad company was authorized to "receive subscriptions of stock to their company by individuals, towns, cities, counties, or other corporations, whether payable in money or other things, with such terms and times of payment, conditions annexed, and kind of payment that may be set forth in the subscription."

On June 17, 1869, upon the request of the commissioners of the railroad company, above named, the judge of the county court entered the order following:

"Present, Thos. R. Barnett, Judge.

"Whereas the Commissioners of the Cumberland & Ohio Railroad Company, by virtue of the authority delegated to them by the charter of said company, have requested the county court of Green county to order an election in the said county of Green, and to submit to the qualified voters of said county the question whether said county court shall subscribe for and on behalf of said county, two hundred and fifty thousand dollars to the capital stock of the Cumberland & Ohio Railroad Company and payable in the bonds of said county, having twenty years to run, and bearing six per cent. interest from date, and upon condition that said company shall locate and construct said railroad through the said county of Green, and within one mile of the town of Greensburg, in said county, and shall expend the amount so subscribed within the limits of Green county; and also upon the further condition that said bonds shall not be issued or said county pay any part of the principal or interest on said amount subscribed to said Cumberland & Ohio Railroad Company, until said county of Green is fully and completely exonerated from the payment of the capital stock voted by said county, and authorized to be subscribed by said

Green county court to the Elizabethtown & Tennessee Railroad or any part of the interest thereon. It is therefore ordered by the court that an election by the qualified votes of Green county, at the voting places in said county, be held and conducted by the several officers as prescribed by law for holding elections on the third day of July, 1869, to vote on the question as to whether or not the said county court shall, for, and on behalf of said county subscribe two hundred and fifty thousand dollars to the capital stock of the said Cumberland & Ohio Railroad conditioned and to be paid, as above stated."

The election was held. The vote was in favor of the proposition and was so properly certified. Thereafterwards, and on June 3, 1870, the county judge made an order, wherein after reciting the proceedings above recited, he says: "I * * * do hereby subscribe for two hundred and fifty thousand dollars of the capital stock of the said Cumberland & Ohio Railroad Company for and on behalf of said county of Green, which subscription is to be paid in the bonds of said county as prescribed in said order of submission, and this subscription is made with the conditions set out in the order of this court ordering said election and now of record in the office of this county." On October 12, 1871, the county judge ordered the bonds to be printed. The bonds, of which these in suit were a part, were issued and delivered to the railroad company during the succeeding year, 1872, the bulk of them on or about August 15th, on which day the county judge made the following order:

"Present, Thos. R. Barnett, Judge.

"Application was this day made to the presiding judge of the county court of Green county, by the president and board of directors of the Cumberland & Ohio Railroad Company to issue the balance of the bonds of said county to the amount of the subscription of said county of Green to said Cumberland & Ohio Railroad Company, and the court being sufficiently advised, it is ordered by the court that the balance of said bonds be and they are hereby ordered to be issued, the same to be signed by the judge of said county court of Green county, and countersigned by the clerk of said court, as required by the charter of said company."

Thereupon the $250,000.00 of the capital stock of the railroad company was delivered to the county, which has since been retained and owned by it. For a time the county raised by tax and paid the interest accruing on the bonds, but thereafter it refused to recognize their validity, and refused to make further payment. The plaintiff is the bona fide holder for value of the bonds and coupons in suit, but had notice that the railroad had not been built further than from the north line of said county to Greensburg, which is about one-quarter of the way through the county. As to this latter fact, it may be noted in this connection that only $150,000 of the proceeds of the bonds had been expended by the Cumberland & Ohio Railroad Company in the construction of the road, and this was on that part of the road north of Greensburg. This expenditure did not complete that portion of the road, but it was completed by the Louisville & Nashville Railroad Company under the stipulation in a lease to it of its road by the Cumberland & Ohio Railroad Company, but at what cost does not appear. In respect to the conditions of the subscription for stock to pay which these bonds were voted, the facts were these: In 1868 at an election in Green county it had been voted to subscribe for $300,000 of the stock of the Elizabethtown & Tennessee Railroad Company, to be paid for in the bonds of the county. Upon making a record of this election the county court made the following order: "It is now therefore ordered that the clerk of this court, for and on behalf of the county of Green, make said subscription on the terms specified in the order submitting the question to a vote as aforesaid." But nothing further was ever done in regard to such a subscription either by the county or the Elizabethtown & Tennessee Railroad Company. No stock was issued to the county or bonds issued to the railroad company. Some further incidental facts will be hereafter mentioned in the opinion in the discussion of the questions involved in the controversy. The bonds in suit, except the numbers given to each bond and the amount therein specified, were in the form following:

"United States of America, county of Green, $500.00. State of Kentucky. For the Cumberland & Ohio Railroad.

"Twenty years after date, the county of Green, in the state of Kentucky,

will pay to the holder of this bond the sum of five hundred dollars with interest thereon at the rate of six per cent. per annum, payable semi-annually upon presentation of the proper coupons hereto attached, for the principal and interest being payable at the bank of America, in the city of New York.

"In testimony whereof, the judge of said county of Green has hereunto set his hand and affixed the seal of said county, on the first day of April, A. D. 1871, and caused the same to be attested by the county clerk, who has also signed the coupons hereto attached.

"[Green county seal.]                    T. R. Barnett, Judge.
                                         "D. T. Towles, Clerk."

The conclusion of law by the court below was "that the plaintiff is not entitled to recover, because the conditions upon which the subscription for the capital stock of the Cumberland & Ohio Railroad Company was made, and upon which the bonds sued on were issued, have not been performed or complied with."

George Du Relle and E. F. Trabue, for plaintiff in error.
Ernest Macpherson, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge (after stating the facts as above). The questions to be decided upon the facts found, the substance of which has been stated, and the proper inferences to be drawn therefrom, are these: First, whether it should be held that the county of Green had been exonerated from the payment of the subscription for the capital stock of the Elizabethtown & Tennessee Railroad Company; and, second, whether these bonds are invalid in the hands of the plaintiff by reason of the fact that only $150,000 of the proceeds of the bonds have been expended in the construction of the road in Green county, or by reason of the fact that the same has not been built through the county. These questions turn largely upon the proper interpretation of the so-called conditions upon which the county authorized these bonds to be issued.

Upon our conference after the original argument in this court, we were in doubt upon some of the questions presented for decision, and certified them to the Supreme Court for its opinion. One—the first of the questions—as that court thought, involved too many points. But we requested that if that question should be deemed too broad, then that the court should advise us whether, "Assuming the facts to be as found, was a bona fide purchaser, before maturity of these bonds and coupons for value, entitled to assume in his purchase that Green county had, before their issuance, been fully and completely exonerated from the payment of the capital stock subscribed for by the county court of said county for and in behalf of said county to the Elizabethtown & Tennessee Railroad Company?" The Supreme Court answered this question as follows: "Construing the second question to inquire not whether there is conclusive presumption, but whether on the facts found there is any presumption at all that the county had been exonerated from its former subscription to another railroad, we answer, Yes." Quinlan v. Green County, 205 U. S. 410, 27 Sup. Ct. 505, 51 L. Ed. 860. On receiving this answer, we heard further argument upon the consequences of the opinion given by the Supreme Court as well as upon the question of the character of the

other so-called conditions, about which the Supreme Court expressed no opinion.

We agree that the exoneration of Green county from any liability on account of its former subscription to another railroad was a condition precedent to the issuance of the bonds, and that without the accomplishment of this condition the plaintiff cannot recover. We concede this, although we cannot help thinking that there is room for the belief that the Legislature of Kentucky intended that the county judge should determine when and whether the condition had been accomplished, and that to hold otherwise is to suppose that these bonds, although they were by the terms of the statute to be negotiable coupon bonds, would, although issued and put upon the market, yet be clogged with doubt of their validity, a doubt which even now might be and still is urged against them. Such bonds would not be marketable, and their purpose would be utterly defeated. For this reason it has sometimes been held that, although the statute does not expressly nominate any officer who is to pass upon the execution of the condition precedent to the issue of such bonds, yet that, in view of the consequences, an implication might arise that the Legislature intended that the officer of the municipality in whose behalf he was acting, and who was charged with the custody and the issuance of the bonds, should, before delivering them, ascertain and determine whether the condition had been complied with. Especially would this be so when the question whether there had been a compliance is one which calls for the exercise of judgment upon facts with which he would be most conversant. It is true that in most of these cases, perhaps in all, there were recitals in the bonds of the regularity of the anterior proceedings or the fulfillment of conditions precedent; but it would seem that for other reasons, if it is intended by the statute that the determination of the fact is committed to the official who issues the bonds, such determination ought to settle the fact. If in such conditions the bonds should be issued without such determination, the question would be open. But here the county judge acted advisedly. In the order that the bonds be issued, he recites that he was sufficiently advised—borrowing an expression from legal procedure—to denote that he had taken notice of and considered the question whether the conditions existed which authorized the issuance of the bonds; in other words, that he had exercised the function devolved upon him. Granting, what must be regarded as settled by authority, that when the condition consists of a distinct and indubitable fact, and nothing is left to the judgment of the official charged with the delivery of the bonds, his delivery of them without the occurrence of the condition would be unauthorized and the bonds be void, yet it would seem upon principle, that if the question whether the condition has been accomplished is one of doubt and uncertainty, and it is apparent that the officer who has charge of the issuance of the bonds is to determine the fact of compliance with the condition, his determination would conclude the question, and, if in the affirmative, bind the county. This is, as we understand, the doctrine on which the judgment of the Supreme Court in Provident Trust Co.

v. Mercer County, 170 U. S. 593, 604, 18 Sup. Ct. 788, 42 L. Ed. 1156, was finally rested. But without pursuing that subject further, we are of opinion that, upon other grounds, the question whether Green county was exonerated from the obligations of the former vote should be determined in the affirmative. We may say in passing that there seems to be grave reasons for doubting whether Green county ever came under an obligation to the Elizabethtown & Tennessee Railroad Company. The subscription was voted, and the county court ordered its clerk to subscribe for the stock. But that was all. The clerk did not subscribe. No bonds were ever issued, and no stock was ever delivered or tendered to the county. In Bates County v. Winters, 112 U. S. 325, 5 Sup. Ct. 157, 28 L. Ed. 744, Chief Justice Waite, after referring to previous cases, summed up the rule as follows:

"The rule may be stated thus: An actual manual subscription on the books of a railroad company is not indispensably necessary to bind a municipality as a subscriber to the capital stock. If the body or agency having authority to make such a subscription passes an ordinance or resolution to the effect that it does thereby, in the name and behalf of the municipality, subscribe a specified amount of stock, and presents a copy of that resolution to the company for acceptance as a subscription, and the company does, in fact, accept, and notifies the municipality, or its proper agent, to that effect, the contract of subscription is complete, and binds the parties according to its terms."

This is a careful and undoubtedly correct statement of the law upon the subject. See, also, Morawetz on Corp. §§ 61, 134; Greene v. Sigua Iron Co., 88 Fed. 203, 31 C. C. A. 458. The county judge might well have thought that as there had been no complete subscription by an actual subscription, and by the acceptance and notification of the railroad company, the county was exonerated from its vote to authorize the proposed subscription. The language of the condition is that the county shall be "exonerated from the payment of the capital stock voted by said county and authorized to be subscribed by said Green county court to the Elizabethtown & Tennessee Railroad." This does not import that a completed subscription had been made, but only that a subscription had been authorized by the former vote; and the county would be exonerated if the subscription which it had authorized was not completed so as to bind the county. These bonds were not issued until four years after the vote of the county authorizing the subscription for stock of the Elizabethtown & Tennessee Railroad Company had been taken and recorded. Meantime, this latter company had given no token of its acceptance, and the county had taken no further step after the direction of the county court to its clerk to make the subscription upon the terms specified in the order submitting the question to a vote. And the subscription was never completed. What more complete exoneration from its former vote could the county of Green have? But, to return to the line of reasoning which we were intending to pursue, we are advised by the answer of the Supreme Court that there was, upon the facts found, a presumption in favor of the bonds that the county had been exonerated from the vote to subscribe to the other railroad stock; not a conclusive presumption, but one that might be controverted. But there is nothing in the facts found which controvert it. On the con-

trary, the facts confirm the presumption. A long time has elapsed since the vote of the county authorized a subscription to the Elizabethtown & Tennessee Railroad Company's stock, several times the length of time required by any statute of limitations, even supposing there had been a complete agreement for the subscription—and no step had been taken. If it be said that the condition must have existed when the bonds were issued in order to make them valid, and that the lapse of time since is immaterial, the answer is that though in one sense this is true, yet in another sense it is important, for the fact that nothing had since been done by either party upon the footing of the vote is pregnant evidence to show that, when these bonds were issued, neither the county nor the Elizabethtown & Tennessee Railroad Company regarded itself as under any contract relations with the other. It may be that if a formal release was necessary there might be some weight in the suggestion that the trial court has found that no such release was ever given, and that this would controvert the presumption that the county had been exonerated. But, as the Supreme Court said in its opinion, no formal release was necessary. "It [the condition] was completely fulfilled, if from any circumstance it should appear that the county had been effectively relieved from any liability on account of the vote in aid of the Elizabethtown Railroad."

We come then to the question whether the other provisions of the vote on which the bonds in suit were issued, namely, "that said company shall locate and construct said railroad through said county of Green, * * * and shall expend the amount so subscribed within the limits of Green county," were conditions precedent to the issue of the bonds, or were stipulations imposed upon the Cumberland & Ohio Railroad Company by its acceptance of the subscription. The acceptance of a contract or an obligation which also in terms imposes obligations upon the obligee, and whereupon the latter seeks and obtains the benefit of the contract, binds the latter for their performance, although he may not have expressly undertaken to be bound. Bishop on Contracts (2d Ed.) § 203; 1 Parsons on Contracts (9th Ed.) § 13, n. 1; Storm v. U. S., 94 U. S. 76, 24 L. Ed. 42.

The question whether the performance of a stipulation in a contract is a condition precedent to the performance of other stipulations in it depends upon the order in which the parties intend the several stipulations to be performed. The calling of a provision or stipulation a condition is not conclusive, and if from the contract or other circumstances it is seen that it was not the intention of the parties that its performance should be a condition precedent it will not be held to be such. Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502; Union Stockyards Co. v. Nashville Packing Co., 140 Fed. 701, 704, 72 C. C. A. 195; Sohier v. Trinity Church, 109 Mass. 1; Greene v. O'Connor, 18 R. I. 56, 25 Atl. 692, 19 L. R. A. 262; Scovill v. McMahon, 62 Conn. 378, 26 Atl. 479, 21 L. R. A. 58, 36 Am. St. Rep. 350; Hartung v. Witte, 59 Wis. 285, 18 N. W. 175. "Conditions have no idiom," said Virgin, Judge, in Bucksport, etc., R. Co. v. Brewer, 67 Me. 295. "Whether they are precedent or subsequent is a ques-

tion purely of intent, and the intention must be determined by considering not only the words of the particular clause, but also the language of the whole contract, as well as the nature of the act required and the subject-matter to which it relates." Conditions are not favored, and a provision will not be construed as such unless the intention is clear. 6 Am. & Eng. Ency. of L. 502; Clapham v. Moyle, 1 Lev. 155; Shep. Touch. 122; Huff v. Nickerson, 27 Me. 106. "Where the language of an agreement can be resolved into a covenant," said Bell, Judge, in Paschall v. Passmore, 15 Pa. 295, 307, "the judicial inclination is to so construe it; and hence it has resulted that certain features have ever been held essential to the constitution of a condition. In the absence of any of these, it is not permitted to work the destructive effect the law otherwise attributes to it."

The question we are now considering was mentioned, but not passed upon, by the Supreme Court, because it was not included in our request for its opinion. But we think it apparent, for many reasons, that the performance of these conditions, so called, was not intended to be required before the delivery of the bonds. The subscription for the stock of a railroad company by a municipality, and the issue of negotiable bonds in payment therefor for the purpose of providing means to assist in the construction of a railroad within its limits, is a transaction familiar to every one. It is not a transaction whereby the municipality contracts with the company to build a road, but is intended to provide means to assist the company in building it, in consideration of acquiring a part of its stock, and of the expected advantages of the road to the community. The statute of Kentucky under which these bonds were issued indicates very clearly, as we think, that the bonds authorized were expected to be negotiated for the means to use in the construction of the road. It is provided that they shall be payable to the bearer, that they shall have interest coupons attached payable semiannually in the city of New York, and that the bonds shall be payable at a designated time which may be as long as 30 years after their date. They were thus required to possess the attributes of commercial paper adapted to sale in public markets. And the proposition on which the electors of Green county voted followed in all particulars the provisions of the statute. And when it was provided that the company "shall expend the amount so subscribed within Green county," we cannot doubt that what was meant was that the proceeds of those bonds should be so used, and not, as has been suggested, that the company should have expended some other money equal in amount to the bonds. Such a construction as would lead to the result suggested would leave the company without the ready means to build the road which it was the purpose to provide for. Moreover, there is a plain distinction made in the proposition voted in the very terms employed. In regard to the requirements we have been last considering, the question was whether the county would subscribe for the stock and pay for it in county bonds, upon condition that the company should construct its road as mentioned, but where the proposition comes to the matter of the exoneration from the vote to the other railroad, that was expressly made

a condition to the issuance of the bonds or the payment of any part of them. The failure to append this condition to the preceding provisions, and the introduction of the positive inhibition here employed, are persuasive evidence that a distinction was contemplated in the vote. To bear the construction that the former were intended to be conditions precedent, we should need to have the inhibition located in those clauses also. The abrupt change is significant of a difference in purpose.

Other reasons are also suggested by counsel; but we cannot doubt that, for those we have mentioned, the proper construction to be given to the proposition submitted to, and authorized by, the electors of Green county is that the railroad company should, upon its acceptance of the subscription, and the delivery of the stock by one, and of the bonds of the other, come under an obligation to comply with those terms of the proposition voted. And we reach this conclusion without regard to the question of an estoppel arising upon the fact that the county accepted the stock, and has continued to retain it. If the question of the intention were in doubt, the interpretation given by the county to its vote by paying the interest would be persuasive of its understanding at the time of the transaction. We think the bonds were lawfully issued, and that the fact that the company has not performed the stipulations of the agreement which it made as a consideration for the bonds does not invalidate them, when, as appears, the delivery of the bonds was final, and they have passed into the hands of other parties for value, as it was the evident intention of the statute that they would do. We need not inquire whether the county could have made a partial defense against these bonds upon the ground that there had been a partial failure of consideration if the railroad company had held them and were now bringing suit upon them. The holder of negotiable paper is entitled to the benefit of the presumption prima facie that he or some previous holder whose title he has acquired is a purchaser in good faith and for value before maturity, in the usual course of business, and without notice of any circumstances impeaching its validity; and that he is the owner thereof, if it is payable to bearer. Daniel on Neg. Inst. § 812. Nothing is here shown to contravene these presumptions. Of course it must always appear that the obligor was competent in law to incur the obligation, and had in fact attempted to incur it. We do not understand that the absence of a recital in municipal bonds that the conditions to their issue have been complied with deprives them of their character of negotiable instruments or of the ordinary presumptions which attend such instruments. Recitals of that character relate to the regularity of the proceedings precedent to their issue, and, if the recitals cover the necessary facts, conclusively establish it. But when, in a case where there are no such recitals, proof is made that the proceedings were in fact regular, the bonds are entitled to the same presumptions in their subsequent negotiation as if they had contained such recitals.

It is suggested that the finding of the court "that the plaintiff is a citizen of the state of New York, and was so when this action was instituted on the 28th day of March, 1899, and that the plaintiff was

the bona fide holder for value of the bonds and coupons sued on, and fully entitled to sue the defendant thereon in this court," was intended only to say that the citizenship of the plaintiff was such as to entitle him to sue in the federal court. But this court, in its question to the Supreme Court, construed this finding to be also a finding that the plaintiff was a bona fide holder for value, and the Supreme Court certainly so construed it as is shown in the statement of facts, and, we have no doubt, correctly. That part of the finding of facts had no relevancy to the question of jurisdiction. If she was a citizen of New York, and was the holder of the bonds, she was entitled to sue. The question of whether she was a bona fide holder for value was a question upon the merits of the case. The phrase which the court below employed was one peculiar to the law of negotiable instruments, and ought to be construed in the sense in which it is there employed. But it really is not material. If, as we hold, the bonds were lawfully issued, the presumptions of law would clothe the plaintiff, if she was the holder, with the character of a bona fide holder for value.

The judgment of the Circuit Court must be reversed, with directions to enter a judgment in favor of the plaintiff for the amount of the bonds and coupons, with interest on the coupons from the time they severally fell due, and interest on the principal of the bonds from the date when the latest coupons thereon severally fell due.

LURTON, Circuit Judge (dissenting). I must in this case, and contrary to the usual practice of this court, express openly the grounds for my dissent to the conclusions reached in this case.

The county has not obtained a road constructed by the company to whose stock it proposed to subscribe. Its money has been thrown away. This suit involves its probable liability upon an issue of bonds aggregating $250,000. This series of bonds with interest already past due, aggregate three-fourths of a million. For this the county will obtain nothing. To prevent just such a possible result the Legislature provided that subscriptions by counties might be voted conditionally. The conditions which the county demanded were intended to absolutely secure the building of the road. By subtilty of construction, upon which I express no opinion, two of these conditions are said now to be only covenants, and, therefore, worthless against an insolvent and nonexistent railway company. For at least 30 years the county has denied its liability, and refused payment of interest. When this denial had been so long acquiesced in that the bonds were purchaseable for little more than the value of wall paper, as stated at the bar, they are acquired by speculators, who now urge that, during all this long, long period of repudiation, the defense of the county has been growing weaker and weaker, and that time, which usually only fortifies a defensive position, has all this time been making bonds valid which were invalid when issued. I will not willingly aid in the destruction of the settled principles which tend to the security of commercial paper. Neither will I agree to strain a finding of facts to hold a county upon obligations which, in my judgment, were never binding either in the forum of law or conscience.

The principal grounds upon which I find myself unable to agree with the court are these:

1. The opinion and conclusion conflicts with the settled views of the Supreme Court in respect to the most important ground upon which it rests. Assuming that the mere fact of issuing these bonds by the county judge was a determination that the conditions had been complied with which authorized their issuance, that determination only raised a presumption in favor of one who should take the bonds before maturity, for value, and without actual notice of the real facts of the case at the date of issuance. This is so because the bonds were without recital. This much was the plain ruling of the Supreme Court in Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138, and Citizens' Savings Ass'n v. Perry County, 156 U. S. 692, 15 Sup. Ct. 547, 39 L. Ed. 585. In this very case we certified the question as to the presumption upon which a purchaser before maturity for value might act in purchasing bonds without recital. Referring to the tendency of some of the earlier cases to deny to bonds in the hands of innocent holders any other defense than want of power, the court said that tendency had been "arrested" by the cases I have cited above, which cases it is said held "that the mere facts of subscription to stock and issue of bonds containing no recitals left it open to the obligor to show that a condition precedent had not been fulfilled." "But," added the court, "these cases in no way conflict with the view expressed by Mr. Justice Story in Pendleton County v. Amy, 13 Wall. 297, 20 L. Ed. 579, and by Mr. Justice Bradley in Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579, that a presumption arises from the mere fact of subscription and issue, though not a conclusive one." "Independent of authority such a presumption exists, and is but an instance of the broader presumption that officers charged with the performance of a public duty perform it correctly." My Brethren do not, as I read the opinion of the court, accept this as an applicable rule of law or an authoritative decision in this case. It is, in conclusion of an argument in favor of the conclusiveness of facts, determined by the county judge, refusing the delivery of the bonds here in question, said:

"His delivery of them without the occurrence of the conditions would be unauthorized and the bonds be void, yet it would seem upon principle that if the question whether the conditions had been accomplished is one of doubt and uncertainty, and it is apparent that the officers who had charge of the issuance of the bonds are to determine the fact of compliance with the condition, his determination would conclude the question, and, if in the affirmative, bind the county."

It is evident that the error of the court in the matter I have referred to is, after all, the real ground of the conclusion reached and its judgment colored by the view before expressed.

2. The conclusion is next placed upon the theory that no subscription had ever been made to the capital stock of the Elizabethtown & Tennessee Railroad Company, although one was authorized. It is stated in the opinion that, although the subscription was voted, and the county court ordered its clerk to subscribe for the stock, "the clerk did not so subscribe." It is also said that, when the bonds here involved were issued, the said Elizabethtown & Tennessee Railroad Com-

pany had given no token of its acceptance, and the county had taken no further step after the direction of the county court to its clerk to make the subscription upon the terms specified. Both in this court and in the Supreme Court this case has proceeded upon the theory that a subscription had been made as authorized. The condition precedent presupposes a subscription had been made from which the county was to be released. The defense has been that it was invalid, because the authority had been delegated to the clerk, and that the case of Mercer, etc., v. Navigation Co., 8 Bush (Ky.) 300, was an express authority supporting the county judge's assumption that a subscription so made was void as a delegation of power which could not be delegated. The subsequent case of Green County v. Shortell, 116 Ky. 108, 75 S. W. 251, was an action upon some of the same series of bonds here in issue, and the Kentucky court there, assuming that the subscription had been made, distinguished the former case upon the ground that in the former case the clerk or commissioner had a discretion to exercise, while in the case before it he had none, the terms and conditions being settled already. There is no finding that no subscription had ever, in fact, been made by the clerk as directed. The presumption that the clerk, as a public official, correctly discharged his duty ought to stand as well when the presumption operates in favor of the county as it does when its effect is detrimental. The only finding of fact which bears upon the question is the seventeenth. That reads as follows:

"That no formal or express exoneration of said county from the payment of said last-named subscription was ever made or attempted, but nothing further has, up to this date, ever been done, in respect to it, and neither bonds by the county nor stock by the said last-named railroad company have ever been issued or delivered in execution of said orders or under the terms of said subscription."

This finding plainly assumes that there had been a subscription, not a mere authority to subscribe. What is said as to nothing further having been done evidently refers to acts subsequent to the subscription. But it is not important that no formal subscription was made by the clerk. He was commanded to do a purely administrative act, and he could have been coerced to do it by writ of mandamus. The liability of the county upon the vote and the order of the county court was the gist of the matter, and fastened a liability upon the county from which it required exoneration as a condition precedent to another liability.

3. I disagree as to the effect of the lapse of time since these bonds were issued upon their validity. I cannot agree that the liability to this plaintiff rested upon any better foundation when he started this suit in 1899 than if he had sued at date of the earliest maturing coupon. The authority to make a subscription at all depended upon the performance of the antecedent condition of exoneration from liability on account of the former subscription to a different company. Yet within 13 months after the order of the court, directing a subscription by its clerk to the Elizabethtown & Tennessee Railroad Company, we find the county judge making the subscription here involved. If the condition precedent had not been performed then, the act was without authority. In payment of this subscription he issued the bonds in suit

in batches, beginning in January, 1872, and completing the issue in April of the same year. The bonds bear date of April 1, 1871. Now, neither at the date of the subscription, June, 1869, nor at the date of the bonds, April, 1871, nor at the date of their issuance between January and April, 1872, had there been any compliance with the condition in respect of exoneration from the prior liability by the execution of any release, exoneration, or through the judgment of any court. The only finding of fact in respect of this condition is the seventeenth finding of fact set out above. That there had been "no formal or express exoneration" is expressly found. Then upon what facts are we to predicate an exoneration? None are found except the vague statement that "nothing further up to this date [has] ever been done in respect to it, and neither bonds by the county nor stock by the last-named railroad company has ever been issued or delivered in execution of said orders or under the terms of said subscription." The plain meaning is that neither the county nor the railroad company took any further step in pursuance of the subscription. Why? Many reasons may be conjectured. After years of effort to obtain subscriptions enough to carry out the project, the promoters may have become disheartened, and finding themselves unable to comply with the conditions made no issue of shares and no demand of payment of this subscription. But if the lapse of time without demand for payment or tender of stock at the date of the issuance of these bonds was not such as to raise a legal presumption of abandonment or release, the bonds when issued were illegal as having been issued before there had been any release or exoneration, formal or informal, express or implied. If then illegal, when did they become good? If the county could not have defended itself when the bonds were issued against its liability upon the Elizabethtown & Tennessee Railroad subscription, would there have been any pretense that this condition precedent had been complied with? Twenty years went by after the Elizabethtown & Tennessee Railroad subscription was made before this suit was brought. How does it happen that from mere lapse of time a defense, good when these bonds were unlawfully issued and put upon the market, has become ineffectual and the bonds valid, although the applicable evidence then and now is identical? I have given attention to what is said upon this subject by Mr. Justice Moody, who, referring to the determination of the county judge when he issued these bonds that this condition of exoneration had been complied with, said that "the fact that for 38 years no one has made any claim against the county, on account of its supposed liability to subscribe to the stock of the Elizabethtown & Tennessee Railroad, shows conclusively that he was right." But I am unable to regard this as an authoritative point of the opinion. The single question which was answered related only to whether "on the facts found" there was "any presumption" at all that the county had been exonerated. This was answered in the affirmative. It is evident that the court did not mean that a rebuttable presumption of exoneration had become conclusive by lapse of time after the fact of issuance. The effect of the fact that the railroad company had done nothing must, in reason, be limited to the date of the issue of the bonds. If the inquiry is, indeed, whether at this date, 38 years after

the subscription, the county can now be regarded as relieved from liability, I should say "Yes." The lapse of time without an action brought to enforce liability would, undoubtedly, raise a presumption of a release or abandonment. Indeed, the positive statutory limitation of actions would justify a holding that there was no longer an existing liability on account of that subscription. But, if the subsequent lapse of time is to be given effect, then I insist that the conduct of the plaintiff and his predecessors in title, as well as that of the county, must be taken into account. These bonds were dated April, 1871. They matured in 1891. This suit was brought in 1899. The coupons which matured in 1878 and for each year subsequent are sued upon. Thus for more than 21 years the county has refused to pay interest, and for all that time this plaintiff and those from whom he took the bonds have acquiesced in the attitude of the county. Has time been steadily strengthening the claim of the holder and destroying the defense of the county?

4. The question certified assumed that the plaintiff took these bonds before maturity. But the only finding in respect to the status of the plaintiff is the first, in these words:

"The court finds that the plaintiff is a citizen of the state of New York, and was so when this action was instituted on the 28th day of March, 1899, and that the plaintiff was then the bona fide holder for value of the bonds and coupons sued on, and fully entitled to sue the defendant thereon in this court."

That finding, I think, should be interpreted as applying to the plea to the jurisdiction. That plea was, by agreement, submitted with the other defenses. It pleaded that the defendant was not the bona fide owner of these bonds when this suit was brought, March 28, 1899, but that the same bonds and coupons had before been in suit in the same court, and the suit abated because the then plaintiff, Herman H. Heaton, was a fictitious plaintiff; the real owners being citizens of Kentucky, and that Quinlan had acquired the bonds thereafter only for the purpose of giving jurisdiction to the circuit court, the beneficial plaintiffs being citizens of Kentucky. Issue was taken upon this plea as to whether the plaintiff was the real owner or only a fictitious plaintiff. The very terms of the finding indicate that the finding was a response to this plea to the jurisdiction. But if the finding be construed as both a finding in respect to the issue upon jurisdiction and as to the status of the plaintiff as the holder of negotiable paper, it will be most unjust to infer from that finding that the plaintiff acquired these bonds before maturity, as implied by the second interrogatory, or without notice of the defenses of the county. This finding is "that on March 28, 1899," plaintiff was the bona fide holder for value of the bonds and coupons sued upon. That date is the date of the bringing of this suit, and the finding was enough to support his claim of right to sue in a United States court, there being diversity of citizenship.

5. But if the judgment of the Circuit Court, holding that the conditions precedent had not been complied with and that the bonds were invalid, is to be reversed, I think common justice requires that there should be no judgment upon these findings against the county, but a new trial awarded. The findings of fact do not cover all of the issues, and upon those to which they are a response are not definite or

full enough to justify a judgment in favor of the plaintiff. If it is of any moment whether the plaintiff is constructively chargeable with knowledge of the situation when these bonds were issued, then it is important to know whether he took these bonds before maturity, or, if not, whether he has acquired the title of one who did. That he was on March 28, 1899, the bona fide holder for value is too indefinite to justify a judgment for him. The same is true in respect to the defense of the statute of limitations. There is no finding upon this, and it is not permissible to piece out defective findings. An examination of the pleadings will show that a large proportion of the coupons in suit matured prior to 1884. Obviously the defense of the statute of limitation was a good defense to all such coupons, unless the plaintiff can in some way show that it ought not to apply to him. But there is no finding as to this defense. Why shall the county be cut off from the benefit of this defense by refusing to award a new trial and the direction of a judgment upon the bonds and coupons in suit.

When a jury has been waived, and a judgment rendered upon a special finding of facts, this court, if it find that the judgment was erroneous, has the power to direct such judgment to be entered as the special findings require, instead of awarding a new trial. Fort Scott v. Hickman, 112 U. S. 150, 5 Sup. Ct. 56, 28 L. Ed. 636. But if the findings are doubtful, obscure, or defective, it is within the power of the court and its high duty, whenever justice seems to require such action, to reverse and remand for a new trial. Graham v. Bayne, 18 How. 60, 15 L. Ed. 265; Flanders v. Tweed, 9 Wall. 425, 19 L. Ed. 678, 680; St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 104, 13 Sup. Ct. 485, 37 L. Ed. 380; Ward v. Cochran, 150 U. S. 597, 608, 14 Sup. Ct. 230, 37 L. Ed. 1195. No judgment ought to be rendered when the findings are silent as to a fact which is essential to a judgment. An imperfect finding like an imperfect special verdict cannot be pieced out. The burden is upon him who asks a judgment to produce a finding of every fact necessary to support it. Hodges v. Easton, 106 U. S. 408, 1 Sup. Ct. 307, 27 L. Ed. 169. In Ward v. Cochran, cited above, there was a special verdict in an action of ejectment reversed and a new trial awarded, because there was no finding that the defendant's possession was adverse and exclusive, although there was a finding that the defendant and his grantors had entered into possession of the land in controversy under a claim of ownership, and that he remained in the open, continued, notorious, and adverse possession thereof for the period of 16 years. Without comment we adopted this course in Anderson v. Messinger, 146 Fed. 179, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094. In Barber v. Coit, 118 Fed. 272, 55 C. C. A. 145, we remanded an appeal for further evidence, upon our own motion, "because great injustice might be done if the case is to be decided upon the present record."

When the findings of fact do not support a judgment against the plaintiff, there can be no judgment for the defendant, upon a writ of error sued out by the plaintiff, where there is an issue made by the defendant, material in character, upon which there is no finding of fact. Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 293, 5 Sup. Ct. 141, 28 L. Ed. 722. When the trial court makes no finding upon

an issue made by the pleadings, because it was deemed unimportant, a court of review will remand for a finding upon the facts bearing upon that issue, if found to be material to a judgment, although all of the evidence relating to the question is in the record. In City of Abilene v. Cornell University, 118 Fed. 379, 382, 55 C. C. A. 205, the Circuit Court of Appeals for the Eighth Circuit said of such a situation:

"We might possibly look into the rejected record and depositions, and determine the issue arising on the plea, but, by so doing, we would be trying on appeal an issue that was not tried below."

Where an omission to make a specific finding of fact is due to the fact that the circuit court made a ruling upon a matter of law which rendered such a finding unimportant, it is the duty of the court that justice may be done, to reverse and remand, under section 701, Rev. St., for such further proceedings to be had in the inferior court as justice may require. Little Miami Railroad Co. v. United States, 108 U. S. 277, 280, 2 Sup. Ct. 627, 27 L. Ed. 724.