# Caldwell & Co.'s Ancillary Receiver et al. v. Landrum et al.

(Decided June 14, 1935.)

CLAUDE E. SMITH, AUD & HIGDON and F. Z. MONARCH for appellants.

J. H. THOMAS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Affirming.

Rutledge Smith, ancillary receiver of Caldwell & Co., and Caldwell & Co., a corporation, brought this action against D. D. Landrum, drainage commissioner of McLean county, and Sam Ferguson Drainage District No. 11 of McLean and Muhlenberg Counties, to recover the sum of $6,000 with 6 per cent. interest from February 12, 1927, and asked that an order of attachment be issued and levied upon the property of the defendant district. The defendants filed an answer denying certain allegations of the petition and pleading some affirmative matter which was denied by a reply. On final hearing the court overruled the demurrer to the answer, sustained the demurrer to the petition as amended, and the plaintiffs having declined to plead further, judgment was rendered dismissing the petition and discharging the attachment. Plaintiffs have appealed.

Briefly stated, the facts pleaded are these: Caldwell & Co. is a Tennessee corporation. By appropriate proceedings receivers were appointed by the United States District Court for the Middle District of Tennessee to take charge of its assets and affairs. Later on Rutledge Smith, one of the receivers so appointed, was appoint-

ed by the United States District Court for the Western District of Kentucky ancillary receiver of· the assets and property of Caldwell & Co. within the Western District of Kentucky, and regularly qualified as such.

The Sam Ferguson Drainage District No. 11 of McLean and Muhlenberg Counties was regularly organized and established by the McLean county court under the provisions of section 2380-1 to 2380-50, Kentucky Statutes, and has power to sue, be sued, and to contract and be contracted with. On February 12, 1924, the Sam Ferguson Drainage District issued certain 6 per cent. bonds of the par value of $1,000 to raise money to pay for the construction of the drainage project. Caldwell & Co. became the owner of these bonds which were payable on February 12, 1927, and no part of the principal or interest on same has been paid, though payment has been frequently demanded. The bonds and coupons forming a part of the issue are payable out of the proceeds of the assessments theretofore legally levied upon the land embraced within the drainage district. D. D. Landrum is now regularly appointed and acting drainage commissioner of McLean county. By reason of the execution and delivery of the bonds, the Sam Ferguson Drainage District No. 11 and D. D. Landrum, drainage commissioner, became indebted to Caldwell & Co. and are now indebted to the plaintiffs·in the sum of $6,000, with interest thereon at the rate of 6 per cent. per annum from the 12th day of February, 1927, until paid. The drainage commissioner of McLean county in office during the years 1926 and 1927 and subsequent years negligently failed and refused to collect the assessments made and levied by the authorities authorized so to do at the time of the creation, organization, and establishment of the district assessed against the lands in said district, and by reason of and on account of such negligent failure and refusal on his part more than a sufficient sum and amount of said assessments made against said lands for the payment and liquidation of said bonds sued on herein which should have been collected in the year 1926 to anticipate the payment thereof were not collected, although they were then in fact collectable. Although the drainage commissioners of McLean county in office during the years 1926 and 1927 and subsequent years so negligently failed and refused to collect said assessments, thereby

leaving uncollected more than a sufficient sum to liqui-
date the bonds sued on, said drainage commissioner or
commissioners applied and expended the proceeds of
assessments that were collected for the payment of the
bonds to the payment of expenses in conducting and
operating office of drainage commissioner and other ex-
penses in a sum sufficient to have paid and liquidated
the bonds sued on. At the time the district was created
and the contract for construction thereof was entered
into, more than half the lands lying in the district were
virgin forests, timbered with a heavy growth of valu-
able timber, against which a lien attached to secure
the payment of the assessments. Since said dates
valuable timber to the amount of many hundreds of
thousands of feet and of the value of many thousands
of dollars have been cut and removed from the land,
thereby greatly diminishing and destroying the security
for the payment of the assessments, all of which was
done with the knowledge and acquiescence of the de-
fendant drainage commissioner and other drainage
commissioners in office during the time intervening since
the execution and delivery of said bonds. By reason
of all of which plaintiffs are entitled to enforce the
satisfaction of the bonds sued on out of any funds,
assets, or emoluments of the defendants; that T. F.
Birkhead, W. G. Newton, and C. E. Smith, have in their
hands several thousands of dollars belonging to the
defendants, the exact amount being unknown. Accom-
panying the petition is a statement containing the names
of persons, numbers of tracts of land, and the amount
of delinquent and unpaid assessments. Thereafter plain-
tiff filed an amended petition stating that although the
bonds and interest aggregated about $8,300, they did
not desire any attachment in excess of the sum of $7,500.
Accompanying the pleadings was an affidavit to the
effect that the bonds sued on were long past due and
unpaid, that the demand is just, and plaintiffs ought
to recover thereon the sum of $6,000 with interest from
February 12, 1927, until paid, and that the drainage
district was hopelessly and wholly insolvent. There-
after another amendment was filed stating that Caldwell
& Co. purchased the bonds for a valuable consideration
before maturity and were holders and owners thereof
in due course. In addition to a general denial, the
answer averred to be true that T. F. Birkhead, W. G.

Newton, and C. E. Smith had in their hands several thousands of dollars belonging to the drainage commissioner of McLean county procured by them as the proceeds of a judgment in the action of O. D. Taylor, Drainage Commissioner, v. Fidelity & Casualty Company et al., in which action they represented the drainage commissioner as his attorneys. The answer further averred that all assessments for the purpose of paying the bonds were applied to the payment of the bonds or coupons attached thereto as provided in the levy of assessments for said purpose. The answer concluded with a prayer that the plaintiffs' petition be dismissed, and that the money in the hands of T. F. Birkhead, W. G. Newton, and C. E. Smith be ordered paid to the drainage districts of McLean county.

To the answer plaintiffs filed a demurrer and also a reply denying that the assessments had been applied to the payment of the bonds and coupons.

Defendants then filed a motion to discharge the attachment on the property garnisheed in the hands of T. F. Birkhead, W. G. Newton, and C. E. Smith. Plaintiffs moved for judgment and asked that the order of attachment be sustained. On final hearing the court entered the judgment above set out.

The principal question for decision is: May the owner of drainage bonds obtain a personal judgment against the drainage district? Appellants' argument in support of the affirmative side of the question may be summarized as follows: Each bond is payable to the bearer and contains an absolute promise on the part of the drainage district to pay. Though payable out of a particular fund, that fact does not make the order or promise conditional. Bank of Kentucky v. Sanders, 3 A. K. Marsh. 184, 13 Am. Dec. 149. The bonds of a drainage district are on the same footing as county or municipal bonds, and though it has been held that the owner may proceed by mandamus or mandatory injunction, it is the rule that these remedies are not exclusive, and he may maintain an action at law for judgment on the bonds. Elliott County. v. Kitchen, 14 Bush, 289; Peter v. Taylor County, 5 Ky. Law Rep. 315; Osenton v. Carter County, 5 Ky. Law Rep. 686; Quinlan v. Green County (C. C. A.) 157 F. 33, 19 L. R. A. (N. S.) 849; Shortell v. Green County, 59 S. W. 522, 22 Ky. Law Rep.

1010. Not only so, but a municipality failing to take steps necessary to collect assessments for authorized street improvements may become liable therefor, though contract provided for improvement at cost of abutting property. City of Catlettsburg v. Citizens' Nat. Bank, 234 Ky. 120, 27 S. W. (2d) 662. Moreover, the drainage act itself, after setting out the procedure to collect the assessments on the lands embraced in the drainage district, adds the following:

> "The provisions herein do not deprive and are not to be construed as depriving the holders of the bonds from having all rights by mandamus or otherwise against the drainage commissioners, the sheriff and all other officers or agents of said district having duties to perform hereunder."

Section 2380-34, Kentucky Statutes. Though the argument is strongly pressed, there are other considerations that cannot be overlooked. The taxing power of counties and cities is not confined to the levy of special assessments. They have a general power of taxation and may acquire property and funds that are subject to the payment of their debts. Hence, in many respects they stand on the same footing as other debtors, and when they default in the payment of their obligations a personal judgment may be obtained. With respect to drainage districts the situation is entirely different. Their power of taxation is confined to special assessments levied for the purpose of obtaining money to pay for and maintain the improvement. They have no property subject to execution or that may be subjected to the payment of certain bonds rather than to all the bonds. Moreover, the other portions of the statute regulating the levy and collection of the assessments to pay the bonds, as well as the quoted provision, have reference to the duties of and the rights of the bondholder against, the drainage commissioners, sheriff, and other collecting officers or agents of the district having duties to perform thereunder, and does not expressly or impliedly authorize a personal judgment against the drainage district. Indeed a personal judgment would bring the bondholder no nearer to the collection of his debt than if none had been obtained, and no reason is perceived why the district should be subjected to the additional expense. We are therefore constrained to the view that a mandamus or mandatory injunction

proceeding in which all questions may be decided and full and complete relief afforded is the sole and exclusive remedy of the owner of drainage bonds, and that the demurrer to the petition as amended was properly sustained.

The action of the court in discharging the attachment was proper. Though the judge sat in vacation, he proceeded under section 964b-1, Kentucky Statutes, 1933 Supplement, and acted as a court and not merely as a judge. City of Owensboro v. Nolan, 242 Ky. 342, 46 S. W. (2d) 490; Estes v. Woodford, 246 Ky. 485, 55 S. W. (2d) 396. Judgment was rendered in favor of the defendants, and where that is the case the Code expressly provides that the attachment shall be discharged. Civil Code of Practice, sec. 260; First Nat. Bank v. Sanders Bros., 162 Ky. 374, 172 S. W. 689.

Judgment affirmed.